UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARYANN ROBINSON,<br><br>Plaintiff,<br><br>-against-<br><br>DEUTSCHE BANK TRUST COMPANY AMERICAS,<br><br>Defendant. | 07-CV-11189 (BSJ)<br>**ELECTRONICALLY FILED** |

**DEFENDANT DEUTSCHE BANK TRUST COMPANY AMERICA'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT**

Kenneth J. Turnbull
Morgan, Lewis & Bockius LLP
101 Park Avenue
New York, New York 10178
(212) 309-6000

Attorneys for Defendant
Deutsche Bank Trust Company Americas

# TABLE OF CONTENTS


| | Page |
|---|---|
| PRELIMINARY STATEMENT | 1 |
| STATEMENT OF FACTS | 2 |
| A. Robinson's Background and Expertise | 2 |
| B. The Interview Process At Deutsche Bank | 3 |
| C. Negotiations | 3 |
| D. The Written Agreement and Merger Clause | 4 |
| ARGUMENT | 4 |
| I. STANDARD OF REVIEW | 4 |
| II. ROBINSON'S CLAIM FOR FRAUDULENT INDUCEMENT FAILS BECAUSE SHE CANNOT ESTABLISH THAT SHE REASONABLY RELIED UPON THE ALLEGED ORAL MISREPRESENTATIONS | 5 |
| A. Elements of a Fraudulent Inducement Claim | 5 |
| B. Robinson Is A Sophisticated Party Who Could Not Be Said To Have Reasonably Relied On The Oral Representations | 6 |
| C. The Existence Of The Merger Clause Further Undermines Robinson's Alleged Reasonable Reliance | 8 |
| CONCLUSION | 10 |

**TABLE OF AUTHORITIES**

**CASES**

Alter v. Borgoricin, No. 97 CIV. 0662(MBM), 1997 WL 691332 (S.D.N.Y. Nov. 6, 1997)....page 7

ATSI Commc'n, Inc. v. Shaar Fund Ltd., 493 F.3d 87 (2d Cir. 2007)....page 5

Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955 (2007)....page 5

Brass v. American Film Techs., Inc, 987 F.2d 142 (2d Cir. 1993)....page 3

Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42 (2d Cir. 1991)....page 3

Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc., 343 F.3d 189 (2d Cir. 2003)....page 6

Feitshans v. Kahn, No. 06 Civ. 2125(SAS), 2006 WL 2714706 (S.D.N.Y. Sept. 21, 2006)....page 3

Junk v. Aon Corp, No. 07 Civ. 4640(LMM)(GWG), 2007 WL 4292034 (S.D.N.Y. Dec. 3, 2007)....page 6, 7, 8

Wurtsbaugh v. Banc of America Sec. LLC, No. 05 CIV. 6220(DLC), 2006 WL 1683416 (S.D.N.Y. June 20, 2006)....page 5, 6, 8

**STATUTES**

Fed. R. Civ. P. 12(b)(6)....page 1, 3, 4

## PRELIMINARY STATEMENT

Defendant Deutsche Bank Trust Company Americas ("Deutsche Bank" or "the Bank") respectfully submits this memorandum of law pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure in support of its motion to dismiss the Complaint filed by Plaintiff Maryann Robinson ("Robinson"). In her Complaint, Robinson asserts a single claim for fraudulent inducement, alleging that the Bank fraudulently induced her to leave her previous employer and enter into employment with Deutsche Bank by making misrepresentations and omissions of facts concerning its loan approval and credit process. As described below, this claim fails because Robinson's purported reliance on these alleged facts was not, as a matter of law, reasonable.

Where an agreement between the parties has been formalized in writing, New York courts are typically reluctant to consider a plaintiff's reliance on oral representations reasonable. This is particularly so where, as here, the plaintiff is a sophisticated party. This reluctance is further increased where, as here, the plaintiff has entered into an agreement containing a merger clause that reflects the parties' intention to make the agreement comprehensive and controlling.

Robinson is a highly sophisticated plaintiff with almost twenty years of experience as a private banker. Before joining Deutsche Bank, she worked as an executive for such renowned financial institutions as Citibank, Union Bank of Switzerland, and HSBC. (Complaint ("Compl.") ¶¶ 8, 9.) In addition to her own sophistication, Robinson was represented throughout the hiring process and negotiation of her agreement by Outten & Golden, LLP, a highly sophisticated employment law firm. Even with such knowledge, experience and expertise in the negotiations, her employment agreement does not contain any provisions addressing the oral promises and representations allegedly made by Deutsche Bank during her interview process.

Moreover, the final agreement between Robinson and Deutsche Bank contained a merger clause stating that, "this Agreement constitutes the entire agreement between you and Deutsche Bank, including its agents or employees and supercedes all other representations, warranties,

agreements, and understandings, oral or otherwise, with respect to matters contained in this Agreement." This clause makes clear that the parties' intended for the agreement to constitute the entire terms of Robinson's employment, and that no other representations should be relied upon.

In light of the foregoing, Robinson cannot establish that she reasonably relied on any oral representations made by the Bank. Therefore, the Court should grant the Bank's motion to dismiss for failure to state a claim upon which relief can be granted and dismiss the Complaint in its entirety.

## STATEMENT OF FACTS[1]

### A. Robinson's Background and Expertise

Robinson graduated magna cum laude from Saint Mary's College-Notre Dame in 1982 with a B.B.A. in Finance and Accounting. (Compl. ¶ 7.) She received a Masters of Management from Northwestern University in 1986. (Id.) Having worked in the banking industry since 1982, she has almost twenty years of experience as a private banker and has worked for various financial institutions such as Citibank, N.A. and Union Bank of Switerland. (Compl. ¶ 8.) In fact, Robinson previously worked for Deutsche Bank's Private Wealth Management Division from February 21, 1995 to July 7, 1997.

Prior to returning to Deutsche Bank in July 2007, Robinson worked for HSBC Bank USA for almost ten years, most recently as Senior Vice President in their Domestic Private Banking Group. (Compl. ¶ 9.) In this position she provided financial services to high net worth individuals with an average net worth of $50 million and their affiliates. (Id.) In 2006, this client base generated substantial revenue for HSBC. (Id.) In addition, in this role, Robinson supervised three bankers and other financial professionals. (Id.)

---

[1] Deutsche Bank denies Robinson's allegations in the Complaint, including her assertions that (1) Deutsche Bank made material representations or omitted material facts, and (2) that such misrepresentations or omissions were knowingly false. However, for purposes of this motion only, Deutsche Bank accepts the allegations in the Complaint as true.

## B. The Interview Process At Deutsche Bank

In early 2006, Deutsche Bank approached Robinson about hiring her to work in its Private Wealth Management Division ("PWM") as a private banker. (Compl. ¶ 10.) Robinson, however, was reluctant to leave her position at HSBC, where she had worked for ten years. (Compl. ¶ 13.) Additionally, she was concerned that Deutsche Bank was not in a position to adequately serve her clients' needs. (Id.) Therefore, she determined that any discussion about joining the Bank was premature and turned down the Bank's offer of employment. (Id.)

In February 2007, after a recruiter from Lockwood Gibbs Associates ("LGA") contacted Robinson to reiterate that the Bank was still interested in hiring her, Robinson agreed to interview with Deutsche Bank at that time. (Compl. ¶ 14.) Robinson interviewed with numerous members of Deutsche Bank's senior management, including Thomas Bowers ("Bowers"), head of U.S. PWM, and Kyle Delaney ("Delaney"), head of the Eastern Region of the U.S. Private Bank. (Compl. ¶ 15.) During these interviews, Robinson described the profile of her clients in extensive detail, including the fact that they were wealthy entrepreneurs with various business interests and investment needs. (Compl. ¶ 16.) In an effort to determine that the Bank could service her clients, Robinson asked specific questions about the Bank's mortgage program and lending processes. (Compl. ¶¶ 20, 21.) She also met with Elizabeth Engel, Managing Director, Head of PWM Lending, with whom she discussed the Bank's credit approval process. (Compl. ¶ 20.)

## C. Negotiations

Robinson retained Outten & Golden LLP, an employment law firm, to assist her in negotiating the terms of her employment with Deutsche Bank.[2] Specifically, Robinson and the

---

[2] When considering a motion to dismiss under Rule 12(b)(6), a court may refer to "documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." Brass v. American Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993) (citing Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47-48 (2d Cir. 1991)). Indeed, "[w]hile consideration of a motion to dismiss under Rule 12(b)(6) is generally limited to consideration of the complaint itself, consideration of materials outside the complaint is not entirely foreclosed." Feitshans v. Kahn, 2006 WL 2714706, at *3 (S.D.N.Y. Sept. 21, 2006). This is particularly so

Bank negotiated over Robinson's replacement award and its vesting period, Company indemnification, and her non-solicitation period. (See Drago Decl. Ex. A.) After extensive negotiations, Robinson and the Bank came to an agreement regarding the terms of her employment.

### D. The Written Agreement and Merger Clause

On April 3, 2007, Deutsche Bank sent Robinson a written offer letter (the "Agreement") setting forth the terms of her employment, including her total compensation and benefits, as a private banker and Managing Director in PWM. (Compl. ¶ 22.) Notably, the Agreement did not include language regarding the Bank's lending and credit approval process. Included within the Agreement was a merger clause which states, "This Agreement constitutes the entire agreement between you and Deutsche Bank, including any of its agents or employees and supercedes all other representations, warranties, agreements, and understandings, oral or otherwise, with respect to the matters contained in this Agreement." (See Drago Decl. Ex. B.) After an extensive interview process and negotiations, Robinson accepted Deutsche Bank's offer of employment. (Compl. ¶ 23.) She signed the Agreement on April 18, 2007 and began working for Deutsche Bank as a private banker and Managing Director in PWM on July 9, 2007. (Compl. ¶¶ 23, 27.)

On November 5, 2007, Robinson tendered her resignation to the Bank. (Compl. ¶ 40.) Her complaint followed.

## ARGUMENT

### I. STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure mandates dismissal of a complaint if there is a "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). While a court deciding a motion to dismiss must assume that "all the allegations on the

---

where "the court has determined that there are no disputes as to the authenticity, accuracy and relevance of such materials." Id. Here, Robinson obviously had knowledge of, and could not dispute, that she was represented by Outten & Golden LLP during her hiring negotiations with the Bank. Therefore, it is proper for the Court to consider this representation in deciding the Bank's motion to dismiss.

complaint are true," Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007), the complaint must contain "more than labels and conclusions, and a formulaic recitation of a cause of action's elements." Id. at 1959. To establish a legally cognizable claim, plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Id. at 1974. See also ATSI Commc'n, Inc. v. Shaar Fund Ltd., 493 F.3d 87, 99 (2d Cir. 2007). As described below, Robinson has failed to plead, and indeed cannot establish, facts necessary to support her claim for fraudulent inducement. Accordingly, her claim should be dismissed.

## II. ROBINSON'S CLAIM FOR FRAUDULENT INDUCEMENT FAILS BECAUSE SHE CANNOT ESTABLISH THAT SHE REASONABLY RELIED UPON THE ALLEGED ORAL MISREPRESENTATIONS

### A. Elements of a Fraudulent Inducement Claim

Under New York law, to sustain a claim for fraudulent inducement a plaintiff must successfully prove "(1) a knowingly false representation of a material fact and (2) detrimental reliance thereon." Wurtsbaugh v. Banc of America Sec. LLC, 2006 WL 1683416, at *6 (S.D.N.Y. June 20, 2006) (internal citation omitted). The false representation of a material fact "can be either a misrepresentation or the material omission of a fact." Id. Critically, ***"[r]eliance means 'reasonable' reliance."*** Id. (emphasis added).

Here, Robinson's attempt to establish a claim for fraudulent inducement fails because she cannot prove that her reliance upon the alleged oral representations made by Deutsche Bank was reasonable. Robinson is a sophisticated party who knowingly entered into a written Agreement, which included a merger clause, with Deutsche Bank. As such, she cannot now claim that she was misled or that she reasonably relied on any oral statements or omissions allegedly made by the Bank during her job interviews.

**B. Robinson Is A Sophisticated Party Who Could Not Be Said To Have Reasonably Relied On The Oral Representations**

A claim of fraud may be dismissed on the pleadings where "a plaintiff will not be able to establish that reliance on the alleged representation was reasonable." Wurtsbaugh, 2006 WL 1683416, at *6. In assessing whether or not the plaintiff's reliance was reasonable, courts consider the entire context of the transaction, "including factors such as its complexity and magnitude, the sophistication of the parties, and the content of any agreements between them." Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc., 343 F.3d 189, 195 (2d Cir. 2003).

In New York, courts are reluctant to find a plaintiff's reliance on oral communications to be reasonable when the parties' have documented their deal in a written agreement. "This reluctance stems from the view that 'a party will not be heard to complain that he has been defrauded when it is his own evident lack of due care which is responsible for his predicament.'" Junk v. Aon Corp., 2007 WL 4292034, at *7 (S.D.N.Y. Dec. 3, 2007) (quoting Emergent Capital, 343 F.3d at 195).

Here, as discussed above, Robinson has a B.B.A. in Finance and Accounting from Saint Mary's College-Notre Dame and a Masters in Management from Northwestern University. (Compl. ¶ 7.) She has been a member of the banking industry for twenty-six years and, as such, is familiar with its practices and customs. (Compl. ¶ 8.) Moreover, Robinson has almost twenty years experience as a private banker, and has worked for various financial institutions such as Citibank, Union Bank of Switzerland and HSBC. (Compl. ¶¶ 8, 9.) In fact, Robinson previously worked for Deutsche Bank's Private Wealth Management Division from February 21, 1995 to July 7, 1997. Prior to returning to Deutsche Bank in July 2007, Robinson rose to the position of Senior Vice President of HSBC in the Domestic Private Banking Group, where she was responsible for providing financial services to high net worth individuals with an average net

worth of $50 million. Her client base generated substantial revenue for HSBC in 2006. (Compl. ¶ 9.)

This is not the resume of a naïve individual who could not appreciate the terms of her written Agreement or understand the need to insert appropriate language in the Agreement addressing terms that were important to her. Rather, Robinson is a sophisticated, experienced, educated business woman who had every opportunity to, and was capable of, incorporating the alleged oral representations made to her into the Agreement. See Alter v. Borgoricin, 1997 WL 691332, at *9 (S.D.N.Y. Nov. 6, 1997) (fraudulent inducement claim based on oral promises fails where it was within the plaintiff's power to incorporate those promises into the Employment Agreement and where plaintiff's failure to do so reflects either his own inconvenient candor or his lack of foresight, but not fraud). If Robinson was so concerned about the Bank's lending and credit approval process, and its ability to deliver on her clients' needs, she should have included language to that effect in her Agreement. She did not. Therefore, she should not now be "heard to complain that [s]he has been defrauded when it is [her] own evident lack of due care which is responsible for [her] predicament." Junk, 2007 WL 4292034, at *7.

Additionally, as if Robinson's notable accolades and career achievements were not enough to render her a "sophisticated" party within the meaning of the law, she was also represented during her hiring negotiations with the Bank by Wendi Lazar of Outten & Golden, LLP, a prestigious employment law firm. Attorneys are typically considered sophisticated parties within the eyes of the court. See Junk, 2007 WL 4292034, at 7. Therefore, both an experienced business woman like Robinson and her lawyer would clearly be capable of understanding the need to incorporate any promises deemed critical into her Agreement and clearly are "sophisticated parties" within the meaning of the law.

### C. The Existence Of The Merger Clause Further Undermines Robinson's Alleged Reasonable Reliance

In addition to being a sophisticated party, the presence of a merger clause in Robinson's Agreement renders her reliance on any oral representations made by Deutsche Bank highly unreasonable. "[T]he existence of a merger clause does increase a court's reluctance to determine that a plaintiff reasonably relied on an oral representation." Junk, 2007 WL 4292034, at 7. The courts take this position because the existence of a merger clause in an Employment Agreement indicates the parties' intention that the Agreement be comprehensive, controlling and reflect the entire understanding between them. Indeed, "the Merger Clause reflects the parties' intention to make the Agreement comprehensive, and further undermines as a matter of law the reasonableness of plaintiffs' asserted reliance on oral representations." Wurtsbaugh, 2006 WL 1683416, at *7.

In Junk, the plaintiff alleged that the defendant fraudulently induced him to enter into employment with Aon Corporation through material representations regarding its product and software development program. The court noted that the plaintiff had signed an offer letter containing a merger clause which stated that "this letter supercedes any prior representations or agreements between you and Aon Consulting, whether written or oral." Junk, 2007 WL 4292034, at *3. The court concluded: "By signing the offer letter, Plaintiff explicitly agreed to forfeit any prior oral agreement between himself and Defendants." Id. The court held that plaintiff would be unable to establish that he reasonably relied on any oral representations made by the Company, and dismissed the complaint pursuant to Rule 12(b)(6). Id.[3]

---

[3] A merger clause that specifies which oral representations it intends to bar liability for would, by itself, be an outright bar to a fraudulent inducement claim. See Junk, 2007 WL 4292034, *6 n.5. A general merger clause, such as the one at issue here, is not by itself an absolute bar. However, it undermines as a matter of law the reasonableness of a plaintiff's alleged reliance on oral representations. Id. See also Wurtsbaugh, 2006 WL 1683416 at *7.

Here, as in Junk, Robinson's signed offer letter included a merger clause which explicitly stated that, "[the] Agreement constitute[s] the entire agreement between [Robinson] and Deutsche Bank, including any of its agents or employees and supercedes all other representations, warranties, agreements, and understandings, oral or otherwise, with respect to the matters contained in [the] Agreement." (See Drago Decl. Ex. B.) This clause makes it perfectly clear that the Agreement is controlling, and that any previous oral or written representations or promises should not be relied upon. Robinson acknowledged and accepted this clause when she signed the Agreement on April 18, 2007. (Id.) Among the many requests her lawyer made, she did not request a change in the language of the clause, nor did she attempt to add any language regarding oral representations made to her during her interview process into the Agreement. In light of these facts, her purported reliance on the Bank's oral statements is, as a matter of law, unreasonable.

**CONCLUSION**

For the foregoing reasons, Defendant Deutsche Bank Trust Company Americas respectfully requests that the Court grant its motion to dismiss Plaintiff Robinson's claim of fraudulent inducement.

Dated: New York, New York
February 4, 2008

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP
By: /s/ Kenneth Turnbull
Kenneth J. Turnbull (KT-4458)

101 Park Avenue
New York, New York 10178
(212) 309-6000

Attorney for Defendant Deutsche Bank Trust Company Americas

# CERTIFICATE OF SERVICE

On this date a true and correct copy of the foregoing Defendant's Memorandum of Law and Declaration in Support of its Motion to Dismiss were served upon the following counsel for plaintiff by ECF and Federal Express, postage prepaid:

Debra L. Raskin, Esq.
Vladeck, Waldman, Elias & Engelhard, P.C.
1501 Broadway, Suite 800
New York, New York 10036

Dated: February 4, 2008

s/ Melissa R. Kelly
Melissa R. Kelly