UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

MARYANN ROBINSON,

                  Plaintiff,                            07 Civ. 11189 (BSJ)

            - against -                    ECF CASE

DEUTSCHE BANK TRUST
COMPANY AMERICAS,

                  Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

========================================================
PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS
========================================================

                                  VLADECK, WALDMAN, ELIAS &
                                    ENGELHARD, P.C.
                                  Attorneys for Plaintiff
                                  1501 Broadway, Suite 800
                                  New York, New York 10036
                                  (212) 403-7300

Of Counsel:
        Debra L. Raskin
        Anand Swaminathan

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. ii

I.    PRELIMINARY STATEMENT ........................................................... 1

II.   STATEMENT OF FACTS ................................................................... 2

      A.    Plaintiff's Background and Clients .......................................... 2

      B.    Defendant's Repeated Misrepresentations to Plaintiff .............................. 3

      C.    Robinson Learns of the Bank's Misrepresentations .................................. 6

III.  ARGUMENT ...................................................................................... 8

      A.    PLAINTIFF'S RELIANCE ON DEFENDANT'S
            MISREPRESENTATIONS WAS NOT UNREASONABLE AS A
            MATTER OF LAW ............................................................................. 8

            1.    The Elements of a Fraudulent Inducement Claim .......................... 8

            2.    The Reasonableness of Plaintiff's Reliance Raises an Issue of Fact
                  Unsuitable for Determination on a Motion to Dismiss ................ 10

                  a.    The Misrepresentations are Collateral to and Not
                        Contradicted by the Agreement ...................................... 11

                  b.    Despite Her Diligent Efforts, Plaintiff Could Not Discover
                        the Falsity of Defendant's Representations ...................... 12

            3.    Because Defendant's Misrepresentations are Collateral to the
                  Contract, the Agreement's General Merger Clause Does Not Make
                  Plaintiff's Reliance Unreasonable as a Matter of Law ................ 14

      B.    DEFENDANT'S REFERENCE TO DOCUMENTS NEITHER
            ATTACHED TO THE COMPLAINT NOR INCORPORATED BY
            REFERENCE IS IMPERMISSIBLE ..................................................... 17

IV.   CONCLUSION ............................................................................... 19

# TABLE OF AUTHORITIES

## CASES

484 Assocs. L.P. v. Moy,
    No. 06 Civ. 2290, 2007 WL 683999 (S.D.N.Y. Mar. 5, 2007) .................................10, 13

Allen v. West Point-Pepperell, Inc.,
    945 F.2d 40 (2d Cir. 1991) ........................................................................... 17

Alter v. Bogoricin,
    No. 97 Civ. 0662, 1997 WL 691332 (S.D.N.Y. Nov. 6, 1997) .................................11, 12

Bangkok Crafts Corp. v. Capitolo Di San Pietro in Vaticano,
    No. 03 Civ. 15, 2007 WL 1687044 (S.D.N.Y. June 11, 2007) ...................................... 10

Bell Atl. Corp. v. Twombly,
    127 S. Ct. 1955 (2007) ............................................................................... 8

Bonacci  v. Lone Star Int'l Energy, Inc.,
    No. 98 Civ. 0634, 1999 WL 76942 (S.D.N.Y. Feb. 16, 1999) .................................10, 11

Bridgestone/Firestone, Inc. v. Recovery Credit Srvs., Inc.,
    98 F.3d 13 (2d Cir. 1996) ............................................................................ 9

Canelle v. Russian Tea Room Realty LLC,
    No. 01 Civ. 0616, 2002 WL 287750 (S.D.N.Y. Feb. 27, 2002) ..................................... 18

Chambers v. Time Warner, Inc.,
    282 F.3d 147 (2d Cir. 2002) .......................................................................... 8

Cress v. Wilson,
    No. 06 Civ. 2717, 2007 WL 1686687 (S.D.N.Y. June 6, 2007) ..................................... 18

Doehla v. Wathne Ltd., Inc.,
    No. 98 Civ. 6087, 1999 WL 566311 (S.D.N.Y. Aug. 3, 1999) ...................................... 10

Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc.,
    343 F.3d 189 (2d Cir. 2003) ......................................................................... 14

Four Finger Art Factory, Inc. v. Dinicola,
    No. 99 Civ. 1259, 2001 WL 21248 (S.D.N.Y. Jan. 9, 2001) ...............................9, 14, 15

Goldman v. Belden,
    754 F.2d 1059 (2d Cir. 1985) ........................................................................ 18

Iqbal v. Hasty,
　　490 F.3d 143 (2d Cir. 2007) ................................................................ 8

Junk v. Aon Corp.,
　　No. 07 Civ. 4640, 2007 WL 4292034 (S.D.N.Y. Dec. 3, 2007) ................... 12, 13, 14, 16

Lama Holding Co. v. Smith Barney, Inc.,
　　88 N.Y.2d 413, 646 N.Y.S.2d 76 (1996) ........................................ 9

Lazard Freres & Co. v. Protective Life Ins. Co.,
　　108 F.3d 1531 (2d Cir. 1997) ................................................. 14

Leonard F. v. Israel Disc. Bank of N.Y.,
　　199 F.3d 99 (2d Cir. 1999) ................................................... 17

PKFinans Int'l Corp. v. IBJ Schroeder Leasing Corp.,
　　No. 96 Civ. 1816, 1996 WL 363138 (S.D.N.Y. June 28, 1996) ..................... 13

Smalley v. Dreyfus Corp.,
　　No. 8857, 2008 WL 357400 (N.Y. 2008) ................................... 10

Stamelman v. Fleishman-Hillard, Inc.,
　　No. 02 Civ. 8318, 2003 WL 21782645 (S.D.N.Y. July 31, 2003) ...................... 10, 13, 15

Stewart v. Jackson & Nash,
　　976 F.2d 86 (2d Cir. 1992) ................................................... 9, 13

Swierkiewicz v. Sorema N.A.,
　　534 U.S. 506 (2002) .......................................................... 8

Wurtsbaugh v. Banc of Am. Sec. LLC,
　　No. 05 Civ. 6220, 2006 WL 1683416 (S.D.N.Y. June 20, 2006) ............................16, 17

Wynn v. AC Rochester,
　　273 F.3d 153 (2d Cir. 2001) ................................................. 9

Yak v. Bank Brussels Lambert,
　　252 F.3d 127 (2d Cir. 2001) ................................................. 17

## STATUTES

Fed. R. Civ. P. 12(b)(6) ............................................................... 8, 17

I.    PRELIMINARY STATEMENT

Plaintiff Maryann Robinson ("Robinson" or "plaintiff") submits this memorandum in opposition to the motion to dismiss of her former employer, Deutsche Bank Trust Company Americas ("defendant" or the "Bank"). Defendant's sole argument is that the misrepresentations and omissions of fact the Complaint sets forth cannot support a claim of fraudulent inducement because plaintiff's reliance was not reasonable as a matter of law. Defendant is wrong.

Plaintiff, who has worked in private banking for almost two decades, accepted employment with the Bank only after defendant made repeated assurances regarding its ability to meet the needs of her existing clients. Those assurances, which centered around the nature and scope of the Bank's private wealth management practice and its lending and credit policies, were critical to Robinson's ability to maintain a client base and also to her reputation in the industry. Plaintiff acted diligently in following up on the Bank's assurances. She not only requested extensive information about the Bank's practices, but also insisted on follow-up discussions with key Bank executives to confirm the Bank's ability to meet her clients' needs. Plaintiff relied on numerous and repeated representations when she entered into a written employment agreement with the Bank (the "Agreement"), a contract that served primarily to set forth her compensation, including bonuses, stock awards and other benefits. The Agreement neither affirmed nor disclaimed the Bank's prior assurances regarding its ability to service Robinson's clients.

Under the allegations in the Complaint, which must be taken as true on this motion, plaintiff's reliance was reasonable. Defendant does not dispute that the alleged misrepresentations were collateral to, that is, not addressed in, the terms of the Agreement. Accordingly, the false statements and omissions are sufficient to support a claim for fraudulent inducement. Because plaintiff was diligent in attempting to assess the veracity of the Bank's

representations, and the Agreement does not contradict those misrepresentations, the reasonableness of plaintiff's reliance is not properly decided on a motion to dismiss. Finally, the Agreement's general merger clause does not render plaintiff's reliance unreasonable as a matter of law for the same reason – the Bank's misrepresentations regarded matters collateral to the parties' contract. Plaintiff therefore is entitled to have a jury determine whether she reasonably relied on defendant's fraudulent misrepresentations.

## II.    STATEMENT OF FACTS

### A.    Plaintiff's Background and Clients

Plaintiff has worked in the banking industry since 1982, with almost 20 years of experience as a private banker at important financial institutions including Citibank, N.A. and Union Bank of Switzerland. (Compl. ¶ 8.)  Prior to joining Deutsche Bank, plaintiff was employed by HSBC Bank USA ("HSBC") for nearly ten years. (Compl. ¶ 9.)  Her last position there was as a Senior Vice President in the Domestic Private Banking Group. (Id.)  In that capacity, she provided financial services to individuals with an average net worth of $50 million, many of whom were entrepreneurs across a wide variety of industries. (Id.)  In 2006, plaintiff's client base generated substantial revenue, and in turn plaintiff earned a base salary of $300,000 and an incentive bonus of $500,000, plus a Special Stock Award. (Id.)

In early 2006, Patrick Campion ("Campion"), the head of defendant's United States Private Bank, called Robinson to inform her that it was interested in hiring her to work as a private banker in its Private Wealth Management Division ("PWM"). (Compl. ¶ 10.)  Campion stated that the Bank wanted to hire senior private bankers and expand its products and services, particularly lending, in the PWM area. (Compl. ¶ 11.)  Plaintiff was reluctant to leave HSBC, where she had built client relationships over ten years, and was concerned that defendant would

be unable to serve adequately her clients' needs. (Compl. ¶ 13.)  Plaintiff concluded that any discussion of joining PWM at that time was premature. (Id.)

B.    Defendant's Repeated Misrepresentations to Plaintiff

In February 2007, after a recruiter from Lockwood Gibb Associates called plaintiff to reiterate the Bank's interest in hiring her, plaintiff agreed to an interview. (Compl. ¶¶ 14, 15.)  Plaintiff interviewed with a number of senior managers at the Bank, including Thomas Bowers ("Bowers"), the head of PWM in the United States, and Kyle Delaney ("Delaney"), a Managing Director and head of the Eastern Region of the United States Private Bank. (Compl. ¶ 15.)

In plaintiff's conversations with each of the Bank's senior managers, including Bowers and Delaney, she explained that she would consider leaving HSBC only for an opportunity that would allow her to provide her clients with better service and access to credit and investment resources than they could obtain at HSBC. (Compl. ¶ 16.)  In each of these conversations, plaintiff described the profile of her clients in extensive detail, and further detailed the specific lending, capital markets, and investment transactions she had executed for them at HSBC. (Id.)  In particular, plaintiff explained that, because her clients were wealthy entrepreneurs with business interests in industries including commercial real estate, private equity, hedge fund management, sports franchise ownership, music publishing and film production, they often had significant credit needs. (Id.)  Plaintiff explained that in securing loans, her clients would pledge not only traditional assets such as marketable securities and residential mortgages, but also non-traditional assets such as commercial mortgages, beneficial interests in contracts, private equity, and equity interests in investment entities. (Id.)  Plaintiff also explained that for some of her clients, HSBC would extend credit on an unsecured basis. (Id.)

Plaintiff interviewed with Bowers, the head of PWM in the United States, in February 2007. After hearing about the specific transactions that plaintiff conducted for her clients at HSBC, Bowers assured Robinson that the Bank could accommodate their credit needs. Bowers stated further that PWM had not adopted the restrictive credit policies of some other institutions, including Citibank and JP Morgan. (Compl. ¶ 18.) Bowers said that plaintiff's wealthy clients could secure loans with their non-traditional assets, as they had done at HSBC, and that such clients could also borrow on an unsecured basis. (Id.) Plaintiff also met with Delaney, the head of the Eastern Region of the United Stated Private Bank. Plaintiff asked Delaney whether PWM had a standard mortgage program that included jumbo mortgages with the commonly-available options of 15 and 30-year fixed rates, as well as 3, 5, 7 and 10-year adjustable interest rates. Delaney responded that such programs existed at the Bank. (Compl. ¶ 21.) During the course of plaintiff's interviews, both Bowers and Delaney assured plaintiff that defendant was committed to growing the United States loan portfolio. (Compl. ¶ 17.)

Also during her February 2007 interview, plaintiff told Bowers that her clients needed access to tailored credit market products. (Compl. ¶ 19.) Bowers immediately called Ralph Tipple ("Tipple"), a Managing Director and head of Private Client Investment Services at the Bank. Tipple described to Robinson standardized structured notes distributed to a wide range of clients in PWM and DB Alex Brown, a related brokerage entity, and stated that defendant had a clear process for credit approval, legal documentation, and trade execution. (Id.) Tipple said that once a banker such as plaintiff identified a transaction, a capital markets specialist would document and execute the transaction. (Id.) Tipple also told Robinson that his group could provide her clients with tailored capital market offerings, including securities trading facilities and derivatives investments. (Id.)

Plaintiff sought, in addition to the representations by Bowers and other senior managers, other assurances regarding the Bank's ability to meet her clients' credit needs. (Compl. ¶ 20.) During her interview with Bowers in February 2007, Robinson insisted on speaking with the person or people who would be in charge of approving loans and capital markets exposure for her clients. (Id.) Bowers identified Elizabeth Engel ("Engel"), who said she was acting head of PWM's Lending Group, as the person plaintiff should speak with. (Id.) When plaintiff and Engel later met, they discussed in detail the profiles, and needs, of plaintiff's clients. (Id.) Although Robinson had specifically asked to speak with the Bank manager who would be in charge of approving plaintiff's requests on behalf of her clients, neither Bowers nor Engel mentioned the Credit Risk Management Group ("CRM"), or that only CRM, and not the Lending Group, had authority to approve loans or credit exposure to PWM clients. (Id.) Plaintiff accordingly believed that she had spoken to the executive charged with approving credit requests. (Compl. ¶ 29.)

After plaintiff's numerous interviews and discussions with senior management there, the Bank sent plaintiff the Agreement, a letter dated April 3, 2007. The Agreement set forth defendant's offer of a position as a private banker in PWM, with the title of Managing Director. (Compl. ¶ 22.) The letter addressed primarily plaintiff's total compensation and benefits, including her annual salary, bonuses, and other payments. (Id.) At or about the same time as plaintiff was interviewing with defendant, she was also considering a job offer from First Republic Bank. (Compl. ¶ 26.) Based on the Bank's senior managers' repeated representations regarding the Bank's ability to meet her clients' needs, on April 18, 2007, Robinson accepted defendant's offer. (Compl. ¶ 23.)

C.    <u>Robinson Learns of the Bank's Misrepresentations</u>

After being placed on garden leave[1] for two months by HSBC, plaintiff began working at the Bank on July 9, 2007. (Compl. ¶ 23, 27.)  It became clear to plaintiff shortly after she joined the Bank that defendant had made serious misrepresentations and failed to disclose material information during the hiring process, and that, at the time they were made, the Bank knew its representations were untrue. (Compl. ¶ 27.)  Despite its numerous assurances to the contrary, the Bank could not meet the needs of plaintiff's clients. (Compl. ¶ 28.)  In fact, the Bank did not approve any of the loans plaintiff proposed on behalf of her clients because, contrary to the representations by Bowers and other senior managers, the Bank lacked unsecured lending capacity and did not have guidelines that accepted the types of collateral plaintiff's clients offered. (<u>Id.</u>)

More specifically, plaintiff learned that contrary to prior representations, the Bank, for purposes of providing loans, did not recognize many types of collateral, including the non-traditional assets plaintiff's clients owned. (Compl. ¶ 30.)  Plaintiff also became aware that the Bank had a cap on their total unsecured loans. (Compl. ¶ 31.)  Robinson had not been told that the cap existed, that at least half of that cap had been exhausted at the time she interviewed with Bowers, or that the cap had been used completely by the time she joined in July 2007. (Compl. ¶ 31.)  In addition, contrary to Tipple's representations in February 2007, defendant did not have a clear process for credit approval, documentation, and execution for transactions involving capital markets products.  Robinson learned this when she attempted to execute a foreign exchange transaction identical to one she had executed repeatedly at HSBC, and was told

---

[1]    Garden leave refers to the period when Robinson technically remained an employee of HSBC but did no work.  Such an enforced period of non-competition is common for employees in the financial services industry.

that the Bank could not process such a transaction. (Compl. ¶ 32.) Plaintiff also learned that, contrary to what Delaney had told her during their first meeting, the Bank did not have a standard residential mortgage program, and that defendant had only two residential mortgage offerings, neither of which was a fixed rate option. (Compl. ¶ 33.)

Plaintiff also became aware that it was CRM, and not the Lending Group, that was responsible for approving loans to PWM clients. (Compl. ¶ 29.) At the time he discussed this issue with plaintiff in February 2007, Bowers knew that CRM had that authority, but nevertheless had plaintiff speak with Engel in the Lending Group. (Id.) By deliberately keeping plaintiff from speaking directly with managers in CRM, Bowers, Engel and the Bank prevented plaintiff from ascertaining that the Bank had misrepresented its credit processes and standards. (Id.) It became even more obvious that the Bank was not actually interested in expanding its lending portfolio in the United States when on October 5, 2007, Pierre de Weck, global head of PWM, stated to the entire PWM staff that "the lending business in the United States is now fully developed." (Compl. ¶ 34.)

As early as July 27, 2007, plaintiff told Delaney that the situation was untenable because she could not properly service her clients and that her inability to meet their needs would ruin her reputation in the industry. She told him that the situation must be fixed or she would lose all of her clients. (Compl. ¶ 36.) Plaintiff reiterated her concerns in an October 5, 2007[2] meeting with Bowers and Delaney. (Compl. ¶ 37.) When, by November 2007, there was no improvement in the situation, plaintiff realized the only option that would allow her to maintain her client base and salvage her career was to resign and pursue a position at a firm that was

---

[2]      The Complaint mistakenly lists the date as September 5, 2007.

committed to private banking. (Compl. ¶ 39.)  She tendered her resignation to the Bank in a letter dated November 5, 2007. (Compl. ¶ 40.)

By leaving HSBC, plaintiff forfeited $713,000 in deferred compensation and lost the ability to begin drawing from her pension at age 55 rather than at HSBC's normal retirement age of 65. (Id.)  In addition, plaintiff accepted $50,000 less in annual salary from the Bank than she had received at HSBC; Robinson accepted the salary cut because the credit and other resources defendant had promised during the hiring process would have allowed her to earn additional incentive compensation to compensate for the salary shortfall. (Compl. ¶ 25.)

III.    ARGUMENT

In reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must accept "all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002).   A complaint must "amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007).[3]  Plaintiff easily satisfies this standard.

A.    PLAINTIFF'S RELIANCE ON DEFENDANT'S MISREPRESENTATIONS WAS NOT UNREASONABLE AS A MATTER OF LAW

1.    The Elements of a Fraudulent Inducement Claim

"Under New York law, to state a claim for fraud a plaintiff must demonstrate: (1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3)

---

[3]    In Iqbal, 490 F.3d at 155, the Court noted that "[c]onsiderable uncertainty concerning the standard for assessing the adequacy of pleadings has recently been created by the Supreme Court's decision in Bell Atl. Corp. v. Twombly, [127 S. Ct. 1955 (2007)]." Nevertheless, the Second Circuit has adhered to the requirement that on a motion to dismiss, the factual allegations of a complaint be accepted as true. Iqbal, 490 F.3d at 147, 152; see Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002)

which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." Wynn v. AC Rochester, 273 F.3d 153, 156 (2d Cir. 2001) (citing Lama Holding Co. v. Smith Barney, Inc., 88 N.Y.2d 413, 421, 646 N.Y.S.2d 76 (1996)).  While a fraud claim may not allege simply that a party to a contract did not intend to meet its obligations, a fraudulent inducement claim can be premised upon false statements of present fact or false statements of future intent that concern matters collateral or extraneous to the contract between the parties. See Bridgestone/Firestone, Inc. v. Recovery Credit Srvs., Inc., 98 F.3d 13, 20 (2d Cir. 1996); Stewart v. Jackson & Nash, 976 F.2d 86, 89-90 (2d Cir. 1992) (reversing dismissal of fraudulent inducement claim of attorney alleging law firm's misrepresentation prior to hiring her); Four Finger Art Factory, Inc. v. Dinicola, No. 99 Civ. 1259, 2001 WL 21248, at * 3 (S.D.N.Y. Jan. 9, 2001).

Plaintiff alleges with specificity a number of misrepresentations, including, among other things, defendant's assurances that it had broad and expanding lending capabilities and capacity, that it had open and flexible credit policies, that it had the present and future ability to meet the needs of plaintiff's clients, and that it had committed to the PWM business.  The Agreement is silent as to each of these issues.  Likely for that reason, defendant does not – because it could not – dispute that these misrepresentations support a claim for fraudulent inducement; those misstatements unquestionably are collateral or extraneous to the Agreement. Instead, the only element of the fraudulent inducement claim that defendant challenges is whether plaintiff reasonably relied upon the alleged misrepresentations.  As discussed below, both the caselaw and the facts alleged here make clear that this question is not properly decided on a motion to dismiss.

    2.    The Reasonableness of Plaintiff's Reliance Raises an Issue
           of Fact Unsuitable for Determination on a Motion to Dismiss

This Court has repeatedly held that the reasonableness of a party's reliance "is intensely fact-specific and generally considered inappropriate for determination on a motion to dismiss." Stamelman v. Fleishman-Hillard, Inc., No. 02 Civ. 8318, 2003 WL 21782645, at *7 (S.D.N.Y. July 31, 2003) (quoting Doehla v. Wathne Ltd., Inc., No. 98 Civ. 6087, 1999 WL 566311, at *10 (S.D.N.Y. Aug. 3, 1999)); accord 484 Assocs. L.P. v. Moy, No. 06 Civ. 2290, 2007 WL 683999, at *3 (S.D.N.Y. Mar. 5, 2007); see Bangkok Crafts Corp. v. Capitolo Di San Pietro in Vaticano, No. 03 Civ. 15, 2007 WL 1687044, at *5 (S.D.N.Y. June 11, 2007); Bonacci v. Lone Star Int'l Energy, Inc., No. 98 Civ. 0634, 1999 WL 76942, at *2 (S.D.N.Y. Feb. 16, 1999).[4]

The caselaw suggests several limited circumstances under which a court may determine, as a matter of law, that a party's reliance was unreasonable, none of which applies here. Courts may rule as a matter of law where the alleged misrepresentations are explicitly contradicted by the written agreement, see Bonacci, 1999 WL 76942, at *2 (internal citations omitted), or where the plaintiff had actual notice of the falsity of the misrepresentations or could have obtained such information "with minimal diligence," see 484 Assocs., 2007 WL 683999, at *3 (internal citations omitted). Again, neither of these exceptions is applicable.

---

[4]    The recent decision of the New York Court of Appeals in Smalley v. Dreyfus Corp., No. 8857, 2008 WL 357400 (N.Y. 2008), issued after defendant filed its initial brief, is inapplicable. Although the Court in Smalley granted a motion to dismiss a fraudulent inducement claim, that determination centered on the plaintiffs' at-will employment status. The Court held that the plaintiffs had failed to allege injuries "separate and distinct from termination of their at-will employment" by the defendant employer. Id. In this case, in contrast, Robinson alleges injuries stemming from her leaving her prior employer, HSBC, as a result of defendant's misrepresentations. The Court in Smalley did not discuss whether the plaintiffs had reasonably relied on the alleged misrepresentations.

a.    The Misrepresentations are Collateral to
and Not Contradicted by the Agreement

None of the fraudulent misrepresentations here is contradicted by the terms of the Agreement, and, as discussed above, they concern matters clearly collateral to the contract. The Agreement the parties signed concerns primarily plaintiff's compensation and benefits, including her salary, incentive compensation, signing award, vesting of shares, deferred compensation, and vacation and benefits; the Agreement also includes standard terms regarding notice and non-solicitation, the use and disclosure of inventions and other forms of goodwill, and confidentiality. The Agreement is silent with respect to the nature and scope of the Bank's PWM practice, as well as its ability, through its lending and capital market functions, to service the needs of plaintiff's clients. Those issues taken together constitute the subject matter of the misrepresentations and omissions plaintiff alleges. Defendant has not cited a provision of the Agreement that contradicts any of the misrepresentations. That failure alone requires that defendant's motion be denied. See Bonacci, 1999 WL 76942, at *2 (declining to dismiss fraudulent inducement claim as a matter of law because defendant "fail[ed] to indicate any [documents forming the agreement] that contradict[ed] the alleged misrepresentations made by [plaintiff]").

The facts in Alter v. Bogoricin, No. 97 Civ. 0662, 1997 WL 691332 (S.D.N.Y. Nov. 6, 1997), cited by defendant,[5] are inapposite for the reason discussed above. The fraudulent inducement claim in Alter was based on the employer's representations that it would share profits with the plaintiff based on his performance. However, the parties' written employment contract contained terms regarding a different profit sharing arrangement. Thus, this Court in Alter held

---

[5]    Defendant Deutsche Bank Trust Company Americas' Memorandum of Law In Support of Its Motion to Dismiss the Complaint ("Def. Br."), at 7.

that the alleged misrepresentations were not collateral to the employment contract, and therefore the plaintiff had failed to state a claim for fraudulent inducement. 1997 WL 691332, at *9.

        b.      Despite Her Diligent Efforts, Plaintiff Could Not
                    <u>Discover the Falsity of Defendant's Representations</u>

While defendant refers repeatedly to plaintiff's sophistication (Def. Br. at 6, 7), the Bank does not and cannot argue that she had knowledge of the falsity of the Bank's misrepresentations or that she failed to act diligently in obtaining information regarding defendant's business. As alleged in the Complaint, plaintiff initially rejected the Bank's overtures, and began to consider leaving her position at HSBC only when the Bank made specific assurances regarding its ability to service plaintiff's existing clients. Plaintiff explained in detail the requirements of those clients to each of defendant's senior managers she met. (Compl. ¶¶ 16, 19, 20.) As alleged in the Complaint, plaintiff's questioning on these matters was extensive and repeated.

Not simply accepting the assurances Bowers, Delaney and others gave her, Robinson also insisted on meeting with the executives at the Bank in charge of approving loans and capital market exposure for her clients. The Bank informed plaintiff that she should speak with Engel, head of PWM's lending group, which she did. Plaintiff's allegations show that she acted diligently in attempting to test the veracity of the Bank's assurances. By directing plaintiff to speak with Engel in PWM's Lending Group, when the CRM group actually would be in charge of approving her clients' loans, the Bank thwarted plaintiff's efforts to test its misstatements. As plaintiff later learned, CRM did not have the capability to make such loans.

In arguing that plaintiff's sophistication renders her reliance unreasonable as a matter of law, defendant relies primarily (Def. Br. at 6-7) on <u>Junk v. Aon Corp.</u>, No. 07 Civ.

4640, 2007 WL 4292034 (S.D.N.Y. Dec. 3, 2007).   In fact, the reasoning in <u>Junk</u> supports plaintiff.

Although this Court in <u>Junk</u> ruled that the plaintiff unreasonably relied on the defendant's statements of present fact, it denied the defendant's motion with respect to the plaintiff's promissory fraud claim.   In the promissory fraud claim, the plaintiff in <u>Junk</u> alleged that at the time the defendant made certain commitments as to its future conduct, the defendant had no intention of performing on its promises. <u>Id.</u> at *7-8.[6]   Here, in addition to allegations that the Bank fraudulently misrepresented a number of present facts, plaintiff also alleges that the Bank made promises of future conduct – that it was committed to growing the PWM business and that it would provide credit to plaintiff's entrepreneurial clients – when in fact it had no intention at the time the statements were made of performing.   Thus, <u>Junk</u> in significant part weighs against the dismissal of this case on motion.

Although reasonable reliance is an element of fraud claims based on both present misrepresentations of fact and future promises made with no intention to perform,[7] the Court in <u>Junk</u> did not apply its holding of reasonable reliance to the alleged misrepresentations of present fact.   The Court did not explain why it reached contradictory conclusions with respect to the common element of reasonable reliance.

---

[6]     Claims of promissory fraud are essentially claims of fraudulent inducement based on misrepresentations of present intent, rather than misrepresentations of present fact.   Courts often discuss cases involving such representations about future events as fraudulent inducement claims. <u>See, e.g.</u>, <u>Stamelman</u>, 2003 WL 21782645, at *6 ("[W]hile mere promissory statements as to what will be done in the future are not actionable, it is settled that, if a promise was actually made with a preconceived and undisclosed intention of not performing it, it constitutes a misrepresentation of material existing fact upon which an action . . . based on fraudulent inducement may be predicated." (quoting <u>Stewart</u>, 976 F.2d at 89)).

[7]     <u>See</u> <u>484 Assocs.</u>, 2007 WL 683999, at *3 (all fraud claims under New York law require reasonable reliance); <u>PKFinans Int'l Corp. v. IBJ Schroeder Leasing Corp.</u>, No. 96 Civ. 1816, 1996 WL 363138, at *3 (S.D.N.Y. June 28, 1996) (same).

The remaining portions of Junk that defendant cites (Def. Br. at 6, 7) also fail to support its motion. The Bank quotes language from Junk regarding a plaintiff's "lack of due care" with respect to the alleged misrepresentation. Unlike the plaintiff in Junk, however, Robinson acted diligently to test the veracity of the Bank's assurances.[8] In addition, in discussing the sophistication of the parties, the Court in Junk noted that the plaintiff was an attorney, while Robinson is not. Id. at *7.[9]

>   3.    Because Defendant's Misrepresentations are Collateral to the
>         Contract, the Agreement's General Merger Clause Does Not
>         Make Plaintiff's Reliance Unreasonable as a Matter of Law

Defendant argues that the Agreement's general merger clause renders unreasonable plaintiff's reliance on the Bank's numerous fraudulent misstatements. (Def. Br. at 8-9.) Only by ignoring that the misrepresentations alleged in the Complaint are collateral or extraneous to the Agreement, see Part III.A.2.a, supra, can defendant make this erroneous argument.

As defendant acknowledges (Def. Br. at 8 n.3), "a general merger clause does not preclude a claim for fraudulent inducement . . . unless it contains a disclaimer with respect to the specific representation. . . ." Four Finger, 2001 WL 21248, at *4. As discussed previously, the Agreement is silent as to the nature and scope of the Bank's PWM practice, and the ability of its lending and capital markets functions to meet the needs of plaintiff's clients. Defendant

---

[8]    Defendant's citation (Def. Br. at 6) to Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc., 343 F.3d 189, 195 (2d Cir. 2003), is infirm for similar reasons. The court in Emergent Capital relied principally on the plaintiff's lack of due care. See 343 F.3d at 195 (relying on the statement in Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1541-43 (2d Cir. 1997) that "the buyer should have, and easily could have, protected itself from misrepresentation by demanding that it see the report prior to a closing").

[9]    As discussed in Part III.B, infra, defendant inappropriately attempts to incorporate information regarding plaintiff's use of an attorney in contract negotiations. These matters, not referenced in the Complaint, are not properly considered on a motion to dismiss.

therefore necessarily does not dispute that these representations are sufficiently collateral or extraneous to support a claim for fraudulent inducement.

Defendant nevertheless asks this Court to apply the general merger clause to render unreasonable as a matter of law plaintiff's reliance on representations wholly collateral to the contract. Were the Court to accede to the Bank's request, the result would convert the general merger clause, in direct contravention of law, into an absolute bar to a fraudulent inducement claim.

A general merger clause renders a party's reliance unreasonable as a matter of law only where the terms of the contract directly contradict the misrepresentations at issue. In Stamelman, this Court stated that a general merger clause could render reliance unreasonable as a matter of law where the agreement at issue "contained language nullifying all prior oral or written agreements with respect to the subject matter of that agreement." Stamelman, 2003 WL 21782645, at *8 (emphasis added). However, Stamelman distinguished that scenario from the case before it, in which the contract did not discuss the representations at issue or specifically disclaim them. Id. Similarly, in Four Finger, this Court rejected the argument that the contract's general merger clause rendered the plaintiff's reliance unreasonable as a matter of law. The Court held that the defendant's fraudulent representations about what he would do once the agreement was signed had not been specifically disclaimed in the written agreement. Four Finger, 2001 WL 21248, at *4.

In sum, a fraudulent inducement claim can survive where the alleged misrepresentations are collateral or extraneous to a contract between the parties. If a general merger clause rendered one party's reliance unreasonable as a matter of law, general merger

clauses would be an absolute bar to fraudulent inducement claims, which defendant concedes they are not.[10]

Defendant cites (Def. Br. at 8-9) only two cases in support of its argument – <u>Junk</u> and <u>Wurtsbaugh v. Banc of Am. Sec. LLC</u>, No. 05 Civ. 6220, 2006 WL 1683416 (S.D.N.Y. June 20, 2006). Both are inapposite. First, defendant's citation to <u>Junk</u> is misleading. The passage of <u>Junk</u> that defendant's brief quotes several times (Def. Br. at 8) was taken from the Court's discussion of a breach of contract claim, not the claim of fraudulent inducement. Defendant cites to the conclusion that "[b]y signing the offer letter [containing a merger clause], Plaintiff explicitly agreed to forfeit any prior oral agreement between himself and Defendants." <u>Junk</u>, 2007 WL 4292034, at *3. However, this language concerned the argument by the plaintiff in <u>Junk</u> that the defendant had orally agreed to an employment contract for a specified duration, despite explicit language in the written agreement that his employment was at will. Not surprisingly, this Court held that where the alleged oral promise of employment for a specified duration was directly contradicted by the written contract's express language, the general merger clause, among other things, precluded a breach of contract claim for wrongful termination. The <u>Junk</u> court's discussion of the general merger clause thus concerned circumstances – both legal and factual – not relevant here.

<u>Wurtsbaugh</u> (Def. Br. at 8) involved an employment contract arising out of the acquisition of a financial software and services company by a large banking institution, and is also inapposite. This Court in <u>Wurtsbaugh</u> found that language in the parties' contract reserving

---

[10]    Plaintiff does not contend that a general merger clause can have no weight in the factfinder's evaluation of a fraudulent inducement claim involving an underlying written contract. Rather, where the alleged misrepresentations are collateral to the terms of the contract, a general merger clause does not make a party's reliance on those collateral misrepresentations unreasonable as a matter of law.

the defendant's right to divest itself of any part of its business directly contradicted the plaintiff's alleged reliance on the defendant's purported promise not to divest itself of certain operations. See 2006 WL 1683416, at *7.  This Court held that "the issue of divesture is therefore not collateral to the contract and any assertion of reliance on the continued presence of the clearing operation is unreasonable." Id.  The Court's mention of the merger clause was surplusage.

Even if this Court in Wurtsbaugh had relied on the merger clause, the analysis would have no bearing here because it is uncontested that the Bank's misrepresentations are collateral or extraneous to the Agreement.  Thus, in contrast to the role of such a clause in Wurtsbaugh, the general merger clause here, under well-established caselaw, is not an absolute bar to a fraudulent inducement claim.  Defendant therefore fails to establish that plaintiff's reliance was not reasonable as a matter of law.

B.    DEFENDANT'S REFERENCE TO DOCUMENTS
      NEITHER ATTACHED TO THE COMPLAINT NOR
      INCORPORATED BY REFERENCE IS IMPERMISSIBLE

Defendant inappropriately attempts to present evidence that plaintiff was assisted by counsel in negotiating the Agreement with the Bank.  In deciding a motion to dismiss under Rule 12(b)(6), a court "must confine its consideration 'to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken.'" Leonard F. v. Israel Disc. Bank of N.Y., 199 F.3d 99, 107 (2d Cir. 1999) (quoting Allen v. West Point-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991)); see Yak v. Bank Brussels Lambert, 252 F.3d 127, 130 (2d Cir. 2001) (internal citations omitted).  Here, the facts defendant alleges and the email defendant submits (Def. Br. at 3-4, 7, 9, Exhibit A) are not stated on the face of the Complaint, attached to the Complaint, or incorporated in the Complaint by reference, and therefore cannot be considered on a motion to dismiss.

Moreover, negotiations with respect to the Agreement, and counsel's participation in that process, are merely one potential factual consideration relevant to assessing whether plaintiff's reliance was reasonable.  Plaintiff is entitled to discovery to obtain countervailing facts, including evidence that, in her industry, specific representations regarding the nature, scope and processes of a private bank's business, including its lending practices, are generally not included in employment contracts.[11]  The weighing of such factors, however, is not permitted at this stage of the litigation. See Cress v. Wilson, No. 06 Civ. 2717, 2007 WL 1686687, at *3 (S.D.N.Y. June 6, 2007) (in considering a motion to dismiss, a court is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." (quoting Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985))); accord Canelle v. Russian Tea Room Realty LLC., No. 01 Civ. 0616, 2002 WL 287750, at *2 (S.D.N.Y. Feb. 27, 2002).

Application of this rule is particularly appropriate here since there are material factual disputes as to the role of counsel in negotiating the Agreement.  Because the allegations in the Complaint easily set forth a plausible claim for fraudulent inducement, plaintiff should be given an opportunity to discover facts as to the role of attorneys in such negotiations and other matters that may be relevant to her reliance.

---

[11]     In similar circumstances, a doctor might retain a lawyer to negotiate her agreement with a practice group, but would not ask the lawyer to discuss, or have the employment contract reflect, the availability of diagnostic equipment such as MRI's or CAT scans; rather, she might inquire to assure herself of the availability of necessary tools.

IV.    <u>CONCLUSION</u>

For the foregoing reasons, defendant's motion to dismiss should be denied.

Dated:  New York, New York
            February 20, 2008

                        VLADECK, WALDMAN, ELIAS
                          & ENGELHARD, P.C.


                        By: __s/ Debra L. Raskin_____

                            Debra L. Raskin
                            Anand Swaminathan
                            Attorneys for Claimant
                            1501 Broadway, Suite 800
                            New York, New York  10036
                            (212) 403-7300