UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

MARYANN ROBINSON,

                             Plaintiff,

                -against-

DEUTSCHE BANK TRUST
COMPANY AMERICAS,

                         Defendant.

07-CV-11189 (BSJ)
**ELECTRONICALLY FILED**

-----------------------------------------------------------------X

## DEFENDANT DEUTSCHE BANK TRUST COMPANY AMERICA'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT

Kenneth J. Turnbull
Morgan, Lewis & Bockius LLP
101 Park Avenue
New York, New York 10178
(212) 309-6000

Attorneys for Defendant
Deutsche Bank Trust Company Americas

## **PRELIMINARY STATEMENT**

As set forth in Deutsche Bank's initial Memorandum of Law ("Def. Mem" or "Memorandum"), Robinson's fraudulent inducement claim should be dismissed because her purported reliance on the Bank's alleged oral statements was not, as a matter of law, reasonable. Where, as here, the parties have reduced their agreement to writing, courts are reluctant to find reliance on oral representations reasonable. Furthermore, where, as here, the parties are sophisticated, and where they have included a general merger clause stating that the written agreement supersedes all prior oral representations, courts properly conclude that a party's reliance on oral representations is unreasonable as a matter of law.

In her Memorandum of Law in Opposition to Deutsche Bank's motion to dismiss ("Pl. Opp." or "Opposition"), Robinson concedes that the reasonableness of her reliance on oral statements can be decided on a motion to dismiss. She argues, however, that her reliance was not unreasonable because (1) she exercised diligence and due care in meeting several employees and asking lots of questions during the interview process, and (2) the agreement, including the merger clause, does not explicitly mention the representations upon which she allegedly relied. Robinson's argument is wrong.

The applicable law makes clear that where sophisticated parties document their deal in a written employment agreement, due care is not measured solely by how many questions a party asked or how many people she spoke with during the interview process. Rather, due care is measured by whether the party included language in the agreement to protect her interests regarding issues that were important to her. Robinson did not include any such language here. Further, where the parties to the written agreement expressly disavow that they are relying on prior oral representations, they will not later be permitted to claim

reliance on such representations. Robinson explicitly agreed that the written Employment Agreement constituted her entire agreement with Deutsche Bank and superseded all prior oral representations. Therefore, her attempt to now rely on the oral representations she has disavowed is unreasonable.

For the reasons set forth in its Memorandum and reiterated below, Deutsche Bank respectfully submits that its motion should be granted and that Robinson's Complaint be dismissed in its entirety.

## ARGUMENT

### I. ROBINSON'S CLAIM FOR FRAUDULENT INDUCEMENT FAILS BECAUSE SHE CANNOT ESTABLISH THAT SHE REASONABLY RELIED UPON THE ALLEGED ORAL MISREPRESENTATIONS

#### A. Robinson Is A Sophisticated Party Who Could Not Be Said To Have Reasonably Relied On The Oral Representations

As set forth in Deutsche Bank's Memorandum, and as Robinson concedes, a claim of fraudulent inducement may be dismissed on the pleadings where the plaintiff cannot establish, as a matter of law, that her reliance on the alleged representations was reasonable. (See Def. Mem. at 6-7; see also Pl. Opp. at 10.) In determining whether or not the plaintiff's reliance was reasonable, courts consider the entire context of the transaction, including the sophistication of the parties, whether there is a written agreement between the parties, and if so, the content of that written agreement. See, e.g., Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc., 343 F.3d 189, 195 (2d Cir. 2003).

Courts are reluctant to find a plaintiff's reliance on oral representations reasonable where the parties have documented their deal in a written agreement. This is especially so where the parties to the agreement are sophisticated. (See Def. Mem. at 6-7.) In such circumstances, courts logically conclude that if a particular point is critical to a party, she

should include that point in the written agreement. If she fails to do so, she will not later be heard to complain that she has been defrauded, since it is her own failure to exercise due care by including it in the agreement that is responsible for her predicament. See Junk v. Aon Corp., 2007 WL 4292034, at *7 (S.D.N.Y. Dec. 3, 2007); Wurtsbaugh v. Banc of America Sec. LLC, 2006 WL 1683416, at *6 (S.D.N.Y. June 20, 2006); Emergent Capital, 343 F.3d at 195.

Here, Robinson is a sophisticated business woman. In 2006, she considered and turned down employment overtures from Deutsche Bank. In 2007, she negotiated a written Employment Agreement with Deutsche Bank. If, as she now claims, the Bank made statements during the interviews that were critical to her accepting employment, she could have and should have incorporated those provisions into her Agreement. See Junk, 2007 WL 4292034, at *7; Emergent Capital, 343 F.3d at 195; Alter v. Borgoricin, 1997 WL 691332, at *9 (S.D.N.Y. Nov. 6, 1997) (fraudulent inducement claim based on oral promises fails where it was within the plaintiff's power to incorporate those promises into the Employment Agreement and where plaintiff's failure to do so reflects either his own inconvenient candor or his lack of foresight, but not fraud.) Robinson's lack of due care in failing to include such provisions mandates that she cannot now be heard to complain that she has been defrauded.¹

---

¹ As stated in the Bank's Memorandum, when considering a motion to dismiss under Rule 12(b)(6), a court may refer to "documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." Brass v. American Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993) (citing Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47-48 (2d Cir. 1991)). Indeed, "[w]hile consideration of a motion to dismiss under Rule 12(b)(6) is generally limited to consideration of the complaint itself, consideration of materials outside the complaint is not entirely foreclosed." Feitshans v. Kahn, 2006 WL 2714706, at *3 (S.D.N.Y. Sept. 21, 2006). This is particularly so where "the court has determined that there are no disputes as to the authenticity, accuracy and relevance of such materials." Id. Here, Robinson obviously had knowledge of, and does not dispute, that she was represented by Outten & Golden LLP, a

Robinson argues that her due care should not be measured by whether she included the allegedly critical points in her Employment Agreement, but rather by how diligent she was during the interview process. She asserts that her reliance on the oral representations cannot be deemed unreasonable because she met with several Deutsche Bank employees and asked many questions during the interview process. (See Pl. Opp. at 12.) Indeed, she contends that Junk is inapplicable here because she, unlike the plaintiff in Junk, acted diligently during the interview process. (See Pl. Opp. at 14.) This argument patently misrepresents the Southern District's decisions in Junk and Alter and ignores the instruction of the Second Circuit in Emergent Capital.

In Junk, the plaintiff alleged that the defendant fraudulently induced him to enter into employment through material representations regarding its product and software development program. See Junk, 2007 WL 4292034, at *2. In granting the defendant's motion to dismiss the plaintiff's fraudulent inducement claim, Judge McKenna did not, as Robinson asserts, consider whether the plaintiff had exercised due care during the interview process by asking lots of questions or meeting with several employees. Rather, the court noted that the plaintiff, a sophisticated party, did not exercise appropriate due care because he failed to insert language into the agreement regarding the defendant's prior oral representations. The court held that by failing to exercise such care, the plaintiff would be unable to establish that he reasonably relied on any oral representations made by the Company. See Id. at *3.[2]

---

sophisticated law firm, during her hiring negotiations with the Bank. Therefore, while not necessary to granting the motion, it is nevertheless proper for the Court to consider the fact that she was represented by counsel.

[2] Robinson half-heartedly implies that she should not be considered a sophisticated party because unlike the plaintiff in Junk, she is not an attorney. As Robinson well knows, however, a lawyer is not the only person who will be considered to be a sophisticated party. See Emergent Capital,, 343 F.3d at 195 (businessman who failed to include language regarding defendant's largest equity investment into the parties' contract deemed sophisticated by the court); Wurtsbaugh, 2006 WL 1683416, at *6 (businessmen who failed to include language

4

Robinson argues that Deutsche Bank's citation to the Second Circuit's opinion in Emergent Capital is "infirm." (See Pl. Opp. at 14 n.8.) According to Robinson, Emergent Capital stands for the proposition that a plaintiff's due care is only measured by the steps she took to investigate the alleged misrepresentations before entering into the agreement, and not by whether she included appropriate language in the parties' agreement. (Id.) In making this argument, Robinson blatantly misrepresents the Second Circuit's opinion.

In Emergent Capital, the Second Circuit did, as Robinson notes, observe that a party has a duty to review relevant documents before entering into an agreement. Contrary to Robinson's suggestion however, the court did not end its analysis there. In fact, immediately after this observation it stressed that due care also requires parties to take measures to adequately protect their interests by including language in the written agreement covering terms they deem critical. The Second Circuit explained:

> "[w]here… a party has been put on notice of the existence of material facts which have not been documented and he nevertheless proceeds with a transaction without securing the available documentation or ***inserting appropriate language in the agreement for his protection***, he may truly be said to have willingly assumed the business risk that the facts may not be as represented. Succinctly put, a party will not be heard to complain that he has been defrauded when it is his own evident lack of due care which is responsible for his predicament."

Emergent Capital, 343 F.3d at 196 (citation omitted) (emphasis added by Second Circuit).

Similarly, in an attempt to diminish the applicability of Alter, Robinson completely misrepresents the court's holding. As Robinson discusses in her Opposition, the court in Alter found that the plaintiff could not sustain a claim for fraudulent inducement because he could not establish that the alleged fraud gave rise to a cause of action separate from his

---

regarding the defendant's clearing operations into their agreement deemed sophisticated by the court). Robinson has a college degree and a Masters degree. She has twenty-six years of experience in the industry, and she has provided financial services and advice to clients with an average net worth of $50 million. In 2006, she earned more than $800,000 in compensation. She is, by all measures, a sophisticated party.

breach of contract claim. (See Pl. Opp. at 11, 12.) However, Robinson conveniently ignores the court's conclusion, in the same line of reasoning, that the plaintiff's fraudulent inducement claim also failed because the plaintiff did not include language in the written agreement on the points that were allegedly important to him. "His claim that he was fraudulently induced by pre-contractual promises is defeated by the stark fact that it was within his power to incorporate those promises – in enforceable terms – into the Employment Agreement. His failure to do so reflects either his own inconvenient candor or his lack of foresight, but not fraud." Alter, 1997 WL 691332, at *9.

In short, the extent of Robinson's questions and meetings during the interview process with Deutsche Bank are wholly irrelevant. What is significant is the fact that she failed to include language regarding the Bank's alleged promises into her Employment Agreement. See, e.g., Junk, 2007 WL 4292034, at *7.[3]

### B. The Existence Of The Merger Clause Further Undermines Robinson's Alleged Reasonable Reliance

As Deutsche Bank demonstrated in its Memorandum, when considering the entire context of a transaction to determine whether a party's reliance on oral representations was reasonable, courts have concluded that the presence of a general merger clause in the written agreement is a factor that weighs heavily in favor of finding that a plaintiff's reliance upon oral representations was, as a matter of law, unreasonable. (See Def. Mem. at 8-9.) "[T]he existence of a merger clause does increase a court's reluctance to determine that a plaintiff reasonably relied on an oral representation." Junk, 2007 WL 4292034, at *7. Courts take

---

[3] Perhaps recognizing that her attempts to distinguish the holding in Junk fail, Robinson asserts that Junk might support her claim because in Junk, the court did not dismiss the plaintiff's promissory fraud claim. (Pl. Opp. at 13.) This argument is inapplicable because unlike the plaintiff in Junk, Robinson did not file a claim for promissory fraud against Deutsche Bank. Her only claim is a claim for fraudulent inducement. The reasoning of the court in Junk to support its dismissal of that claim, is, as noted above, the relevant portion of the analysis and supports dismissal of Robinson's Complaint.

this position because the existence of a merger clause in an employment agreement indicates the parties' intention that the agreement be comprehensive, controlling and constitute the entire understanding between them. Indeed, as Judge Cote observed in Wurtsbaugh, "the Merger Clause reflects the parties' intention to make the Agreement comprehensive, and further undermines as a matter of law the reasonableness of plaintiffs' asserted reliance on oral representations." Wurtsbaugh, 2006 WL 1683416, at *7.

Robinson concedes, as she must, that the existence of a general merger clause carries weight in determining whether reliance on oral representations will be deemed reasonable. (See Pl. Opp. at 16 n.10.) Nevertheless, she argues that where the alleged misrepresentations are not explicitly contradicted by the written agreement, reliance cannot be found to be unreasonable. (See Pl. Opp. at 11, citing Bonacci v. Lone Star Int'l Energy, Inc., 1999 WL 76942, at *2 (S.D.N.Y. Feb. 16, 1999)). Relying on Stamelman v. Fleishman-Hillard, Inc. 2003 WL 21782645, at *8 (S.D.N.Y. July 31, 2003), Robinson argues that a general merger clause "renders a party's reliance unreasonable as a matter of law only where the terms of a contract directly contradict the misrepresentations at issue." (Pl. Opp. at 15.) This argument reflects a fundamental misunderstanding of the law.

As Robinson points out, a claim for fraudulent inducement does not exist unless the alleged misrepresentations are "collateral" or "extraneous" to the terms of the parties' contract. (See Pl. Opp. at 9, 15.)[4] If the alleged oral representations were explicitly contradicted by the terms of the written agreement, as Robinson claims is necessary, they would not be "collateral" and there could be no claim for fraudulent inducement. Accordingly, the issue of reasonable reliance would never be reached. Rather, the only claim

---

[4] In fact, throughout her opposition Robinson argues that the alleged misrepresentations are collateral to the Agreement, and that she is therefore allowed to pursue a claim for fraudulent inducement. This is just one example of many in which Robinson responds to an argument that the Bank never made.

7

that could be brought in such circumstances would be a breach of contract claim. Thus, Robinson's circular argument falls of its own weight.

Moreover, contrary to Robinson's assertion, the Bonacci case does not stand for the proposition that reliance may be unreasonable *only* where the alleged misrepresentations are explicitly contradicted by written documents. Rather, Bonacci stands for the uncontroversial principle that a party cannot blithely ignore documents relevant to a transaction and later claim she was defrauded because she was unaware of the facts contained in these documents. Specifically, in Bonacci, the plaintiffs brought a shareholder securities fraud case. In dismissing the fraud claim, the court ruled that investors may not rely on alleged oral representations where the investment documents contradict the alleged representations. In those cases, and in Bonacci, there is no agreement between the parties for the court to consider.

The facts in Junk further belie Robinson's attempt to limit the relevance of the general merger clause. In Junk, the specific subject matter of the defendant's oral representations was not referenced in the employment agreement. Nevertheless, the court noted that by signing an offer letter that contained a general merger clause, "Plaintiff explicitly agreed to forfeit *any* prior oral agreement between himself and Defendants." Junk, 2007 WL 4292034, at *3 (emphasis added).[5] The court found that because the plaintiff, a sophisticated party, had entered into a written agreement containing a merger clause, he

---

[5] Robinson contends that the Bank's citation to this language in Junk is misleading. In fact, it is Robinson who attempts to mislead this Court. She claims that because this language, as well as the language of plaintiff's merger clause, was first discussed by the court when determining plaintiff's breach of contract claim, it is inapplicable to the fraudulent inducement claim. However, she fails to acknowledge that the court once again discusses the merger clause when deciding plaintiff's fraudulent inducement claim. Moreover, the court relies on the presence of the merger clause to support its holding that plaintiff's reliance was unreasonable. Accordingly, the merger clause was relevant, and in fact significant, to the plaintiff's fraudulent inducement claim.

could not, as a matter of law, establish that his reliance on the defendant's oral representations was reasonable.

Robinson's reliance on <u>Stamelman</u> to support her argument is misplaced. In fact, <u>Stamelman</u> supports Deutsche Bank's argument that a general merger clause can support a conclusion that a plaintiff's reliance on oral representations is unreasonable. In <u>Stamelman</u>, unlike the situation here, the parties' agreement did not include a merger clause. As such, the court observed that the oral representations were "not explicitly excluded" by the parties' written agreement. <u>Stamelman</u>, 2003 WL 21782645, at *8. In fact, the court highlighted the importance of a merger clause by discussing and distinguishing <u>Robert J. McRell Assocs., Inc. v. Insurance Co. of N. Am.</u>, 677 F. Supp. 721 (S.D.N.Y. 1987), where the agreement contained a standard merger clause. "The court in *McRell Assocs.* found that reliance was unreasonable as a matter of law because of a merger clause in the agreement that contained language nullifying all prior oral or written agreements with respect to the subject matter of that agreement. The facts are clearly different in this case." <u>Stamelman</u>, 2003 WL 21782645, at *8. Relying upon this distinction, the court in <u>Stamelman</u> determined that, because there was nothing in the agreement to nullify or exclude the oral representations, it could not conclude that the plaintiff's reliance was unreasonable. See <u>Stamelman</u>, 2003 WL 21782645, at *8.

Here, in stark contrast to <u>Stamelman</u>, the Employment Agreement between Robinson and Deutsche Bank contains a general merger clause that explains: "This Agreement constitutes the entire agreement between you and Deutsche Bank, including any of its agents or employees and supersedes all other representations, warranties, agreements, and understandings, oral or otherwise, with respect to the matters contained in this Agreement."

9

(See Drago Decl. Ex. B.) Thus, unlike the circumstances in Stamelman, Robinson and Deutsche Bank agreed that all prior oral representations were "explicitly excluded" from their Agreement.

In a desperate, last ditch attempt to avoid dismissal of her claim, Robinson asserts that Deutsche Bank is seeking a ruling that general merger clauses operate as an absolute bar to fraudulent inducement claims. This is patently false. In fact, Deutsche Bank expressly acknowledged in its Memorandum that only a specific merger clause, which specifies the particular oral representations it intends to bar, would by itself be an outright bar to a fraudulent inducement claim. (See Def. Mem. at 8, n.3.) Instead, Deutsche Bank's argument, consistent with the applicable case law, is that when considering the entire context of a transaction, the Court can determine that presence of a general merger clause in a written agreement provides additional support for the conclusion that reliance on oral representations is, as a matter of law, unreasonable. See Junk, 2007 WL 4292034, at *3; Wurtsbaugh, 2006 WL 1683416, at *7 (presence of a general merger clause further undermines as a matter of law the reasonableness of plaintiffs' asserted reliance on oral representations.) [6] Here, the general merger clause, incorporated into the written agreement, combined with the fact that the parties are sophisticated, supports the conclusion that Robinson's purported reliance on oral representations was unreasonable as a matter of law.

---

[6] In this regard, Robinson's citation to Four Finger Art Factory, Inc. v. Dinicola, 2001 WL 21248, at *4 (S.D.N.Y. Jan. 9, 2001), is also misplaced. The court in Four Finger merely stated that a general merger clause does not, by itself, *preclude* a finding that the plaintiff reasonably relied on the defendant's oral representations. See Id. "[A] general merger clause does not preclude a claim for fraudulent inducement, unless it contains a disclaimer with respect to the specific representation." Id. This is consistent with Deutsche Bank's position.

## CONCLUSION

For the foregoing reasons, as well as the reasons set forth in its initial Memorandum, Defendant Deutsche Bank Trust Company Americas respectfully requests that the Court grant its motion to dismiss Plaintiff Robinson's claim of fraudulent inducement.

Dated: New York, New York
       March 5, 2008

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP
By:   /s/ Kenneth Turnbull
      Kenneth J. Turnbull (KT-4458)

101 Park Avenue
New York, New York 10178
(212) 309-6000

Attorney for Defendant Deutsche Bank Trust Company Americas

## CERTIFICATE OF SERVICE

On this date a true and correct copy of the foregoing Defendant's Reply Memorandum of Law in Further Support of its Motion to Dismiss the Complaint were served upon the following counsel for plaintiff by ECF and Federal Express, postage prepaid:

>Debra L. Raskin, Esq.
>Vladeck, Waldman, Elias & Engelhard, P.C.
>1501 Broadway, Suite 800
>New York, New York 10036

Dated: March 5, 2008

                                            s/ Melissa R. Kelly
                                            Melissa R. Kelly