```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
MARYANN ROBINSON,                   :
                                    :
                    Plaintiff,      :
                                    :    07-CV-11189(BSJ)
                                    :
                                    :    Order
                                    :
                                    :
DEUTSCHE BANK TRUST                 :
COMPANY AMERICAS,                   :
                                    :
                    Defendant.      :
------------------------------------x
```
**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

Plaintiff Maryann Robinson is a former employee of Deutsche Bank Trust Company Americas ("Defendant" or "Deutsche Bank"), who now brings suit against Defendant asserting a claim of fraudulent inducement. Defendant moves to dismiss Plaintiff's complaint under Federal Rule of Civil Procedure 12(b)(6), citing Plaintiff's failure to state a claim upon which relief can be granted. For the reasons set forth below, Defendant's motion to dismiss is DENIED.

### BACKGROUND[1]

Defendant Deutsche Bank is incorporated in New York with its principal place of business at 60 Wall Street, New York, New

---

[1] This factual summary is drawn from the Complaint, the factual allegations of which are accepted as true for the purpose of deciding this motion.



York. Plaintiff's Complaint ("Compl.") ¶ 4. Deutsche Bank is a wholly owned subsidiary of Deutsche Bank AG, a publicly held German banking entity. Id. Plaintiff worked for Defendant from July 2007 until November 2007 as a Private Banker in Defendant's Private Wealth Management Division ("PWM") with the title Managing Director. Id. ¶ 3. Plaintiff has a B.B.A. in Finance and Accounting, a Masters of Management, and almost 20 years of experience as a private banker. Id. ¶¶ 7-8. Prior to joining Deutsche Bank, Plaintiff worked for HSBC Bank USA ("HSBC") for nearly ten years. As Senior Vice President of HSBC in the Domestic Private Banking Group, she provided financial services to high net worth individuals with an average net worth of $50 million and their affiliates. Id. ¶ 9.

Over the course of 2006, Defendant recruited Plaintiff to work in its PWM Division as a private banker. Id. ¶¶ 10, 14. In or around February 2007, Plaintiff interviewed with five or six members of senior management at Deutsche Bank, including Thomas Bowers ("Bowers"), the head of the United States PWM, and Kyle Delaney ("Delaney"), the head of the Eastern Region of the United States Private Bank. Id. ¶¶ 13, 15. Plaintiff alleges that throughout the hiring process, she detailed the specific lending, capital markets, and investment transactions she had executed for her clients at HSBC. Id. ¶ 16. She explained that her clients had significant credit needs. Id. She described

2

the types of collateral her clients pledged to secure their loans, which included not only traditional assets such as marketable securities and residential mortgages, but also non-traditional assets such as commercial mortgages, beneficial interests in contracts, private equity in operating companies and funds, and equity interests in various investment entities. Id. Plaintiff further noted that for certain clients, HSBC had extended credit on an unsecured basis. Id.

During the interviews, Defendant assured Plaintiff that it could accommodate her clients' credit needs, that PWM had not adopted restrictive credit policies as had other lending institutions, that wealthy clients could secure loans with their non-traditional assets and borrow on an unsecured basis, and that Plaintiff's clients would have access to tailored capital markets products. Id. ¶¶ 18-19, 21. Plaintiff also alleges that in response to her request to meet with the person in charge of approving loans and capital markets exposure for her clients, Bowers scheduled a meeting between Plaintiff and Elizabeth Engel, the head of PWM's Lending Group. Id. ¶ 20. Plaintiff asserts that she relied upon these representations in deciding to accept employment with Deutsche Bank and relinquish her position with HSBC. Id. ¶ 24.

Defendant sent Plaintiff a written offer letter dated April 3, 2007 (the "Agreement"), setting forth the terms of her

employment, including title, salary, and bonus. Id. ¶ 22. The Agreement is silent with respect to the nature and scope of the Bank's PWM practice, as well as its ability to service the needs of plaintiff's clients. See Drago Decl. Ex. B. Included within the Agreement is a merger clause which states, "[t]his Agreement constitutes the entire agreement between you and Deutsche Bank, including any of its agents or employees and supercedes all other representations, warranties, agreements, and understandings, oral or otherwise, with respect to the matters contained in this Agreement." Id.

Plaintiff alleges that shortly after joining Deutsche Bank, it became clear to her that Defendant had knowingly made serious misrepresentations and failed to disclose information during the hiring process. Compl. ¶ 27. Specifically, Defendant misrepresented its credit standards and loan practices. Id. ¶ 30. Contrary to what Plaintiff was told, Defendant did not recognize many types of collateral, including the non-traditional assets Plaintiff's clients owned, for the purpose of providing loans. Id. ¶¶ 30, 33. During Plaintiff's employment there, Deutsche Bank did not approve any loans Plaintiff proposed on behalf of her clients due to its lack of unsecured lending capacity or lack of lending guidelines for the clients' collateral. Id. ¶ 28. Additionally, Defendant did not disclose that the Credit Risk Management area ("CRM"), and not the

4

Lending Group, had the authority to approve loans to PWM clients. Id. ¶ 29.

According to the Complaint, on or about July 27, 2007, and then again in September 2007, Plaintiff told Delaney that the current situation was untenable because she could not properly service her clients and that her continuing inability to meet her clients' needs would ruin her reputation in the industry. Id. ¶ 36. She told him that the situation must be fixed or she would be forced to resign. Id. In a meeting with Bowers and Delaney on or about September 5, 2007, Bowers told Plaintiff that he envisioned the lending process could be fixed within a month or two. Id. ¶ 37. By November 2007, there was no improvement in the situation; indeed, the credit process was becoming more restrictive. Id. ¶ 39. Thus, in a letter dated November 5, 2007, Plaintiff tendered her resignation to Deutsche Bank. Id. ¶ 40. Plaintiff now alleges and seeks compensation from Defendant for fraudulent inducement. Defendant moves to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## DISCUSSION

I. Legal Standard

Under Rule 12(b)(6) a complaint will be dismissed if there is a "failure to state a claim upon which relief can be

granted." Fed. R. Civ. P. 12(b)(6). The Court must read the complaint generously, accepting the truth of and drawing all reasonable inferences from well-pleaded factual allegations. See York v. Ass'n of Bar of the City of N.Y., 286 F.3d 122, 125 (2d Cir. 2002); see also Mills v. Polar Molecular Corp., 12 F.3d 1170, 1174 (2d Cir. 1993). A court should dismiss a complaint only "if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Valmonte v. Bane, 18 F.3d 992, 998 (2d Cir. 1994) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); see also Jenkins v. McKeithen, 395 U.S. 411, 422 (1969) (citation omitted). "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" Atsi Communications, Inc. v. Shaar Fund Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007)).

II. Fraudulent Inducement

Under New York law, to sustain a claim for fraudulent inducement a plaintiff must successfully allege "(1) a knowingly false representation of a material fact and (2) detrimental reliance thereon. The false representation can be either a misrepresentation or the material omission of a fact. Reliance

means 'reasonable' reliance." Junk v. Aon Corp., No. 07 Civ. 4640, 2007 WL 4292034, at *6 (S.D.N.Y. Dec. 3, 2007) (citing Wurtsbaugh v. Banc of America Securities LLC, No. 05 Civ. 6220, 2006 WL 1683416, at *6 (S.D.N.Y. June 20, 2006).

In the present case, Defendant contends that Plaintiff's attempt to establish a claim for fraudulent inducement fails because she cannot prove that her reliance upon the alleged oral representations made by Deutsche Bank was reasonable. See Def. Br. 5. Often, "[w]hether or not reliance on alleged misrepresentations is reasonable in the context of a particular case is intensely fact-specific and generally considered inappropriate for determination on a motion to dismiss." Stamelman v. Fleishman-Hillard, Inc., No. 02 Civ. 8318, 2003 WL 21782645, at *7 (S.D.N.Y. July 31, 2003)(quoting Doehla v. Wathne Ltd., Inc., No. 98 Civ. 6087, 1999 WL 566311, at *10 (S.D.N.Y. Aug. 3, 1999)); accord 484 Assocs. L.P. v. Moy, No. 06 Civ. 2290, 2007 WL 683999, at *3 (S.D.N.Y. Mar. 5, 2007); see Bangkok Crafts Corp. v. Capitolo Di San Pietro in Vaticano, No. 03 Civ. 15, 2007 WL 1687044, at *5 (S.D.N.Y. June 11, 2007); Bonacci v. Lone Star Int'l Energy, Inc., No. 98 Civ. 0634, 1999 WL 76942, at *2 (S.D.N.Y. Feb. 16, 1999). However, under certain circumstances, dismissal is appropriate at this stage in the litigation. For example, New York courts have determined as a matter of law that a party's reliance was unreasonable where

the alleged misrepresentation is explicitly contradicted by the written agreement. See Alter v. Bogoricin, No. 97 Civ. 0662, 1997 WL 691332, at *9 (S.D.N.Y. Nov. 6, 1997); see also Wurtsbaugh, 2006 WL 1683416, at *7 (upholding a motion to dismiss a claim of fraudulent inducement where the subject matter of the alleged misrepresentation is not collateral to the contract). Yet, in another set of cases, courts in this district have declined to find reliance unreasonable as a matter of law where there is no contradiction between the agreement and the representation. This occurs where the written document lacks a merger clause and is not otherwise explicitly contradicted by the alleged misrepresentation. See Bonacci, 1999 WL 76942, at *2; see also Stamelman, 2003 WL 21782645, at *8.

The present case occupies a middle ground. Here, there is no explicit contradiction between the oral representations and the written Agreement, but the Agreement does contain a general merger clause. Under New York law, however, a general merger clause does not, standing alone, preclude a claim of fraudulent inducement.[2] Four Finger Art Factory, Inc. v. Dinicola, No. 99

---

[2] A merger clause that specifies which oral representations it intends to bar liability for would, by itself, be an outright bar to a fraudulent inducement claim. See Junk, 2007 WL 4292034, at *6 n.5; but cf. Warner Theatre Associates Limited Partnership v. Metropolitan Life Ins. Co., 149 F.3d 134, 136 (2d Cir. 1998) (citation omitted) ("if the allegedly misrepresented facts are peculiarly within the misrepresenting party's knowledge, even a specific disclaimer will not undermine another party's allegation of reasonable reliance on the misrepresentations.") While a general merger clause is not

Civ. 1259, 2001 WL 21248, at *4 (S.D.N.Y. Jan. 9, 2001); see Manufacturers Hanover Trust Co. v. Yanakas, 7 F.3d 310, 315 (2d Cir.1993)(with regard to the merger clause, "where specificity has been lacking, dismissal of the fraud claim has been ruled inappropriate"). However, in moving to dismiss, Defendant points to a recent case in this district, Junk v. Aon Corp., which, like this case, involved a claim of fraudulent inducement in the context of an employment agreement. See 2007 WL 4292034, at *5-*7. Also like the present case, Junk involved an employment contract that contained a general merger clause, but no explicit contradiction between the agreement and the oral representations relied upon by the plaintiff. Id. at *3.

The court in Junk noted that New York courts are typically reluctant to consider a plaintiff's reliance upon oral communications reasonable where an agreement has been formalized in writing, with a greater reluctance to do so where the contract contains a merger clause and where the plaintiff is a sophisticated party. Id. at *7. As a result, the court concluded that the plaintiff's reliance on the oral representations was unreasonable as a matter of law based on the combination of the formalized written agreement, the merger clause, and the plaintiff's status as a sophisticated party.

---

by itself an absolute bar, it undermines as a matter of law the reasonableness of a plaintiff's alleged reliance on oral representations. See Junk, 2007 WL 4292034, *6 n.5; see also Wurtsbaugh, 2006 WL 1683416, at *7.

9

Id. In the present case, Defendant concedes that a general merger clause does not by itself preclude the claim as a matter of law. Def. Br. 8 n.3. However, Defendant argues that, as in Junk, when considered together with Plaintiff's failure to include the oral representations in the formalized agreement and Plaintiff's status as a sophisticated party,[3] the presence of a merger clause should defeat Plaintiff's claim by rendering her reliance on the oral representations unreasonable as a matter of law.

Nonetheless, this Court finds Junk distinguishable from the instant case in terms of the nature of the inducement and the contract that are at issue.[4] While the alleged fraudulent representation in each case is collateral to the relevant contract, in Junk, the subject matter of the representation appears to be more related to the subject matter that was included in the contract to the extent that the representation concerned the length of employment. See Junk, 2007 WL 4292034, at *6, *1. By contrast, the subject matter of the

---

[3] For the reasons discussed throughout this decision, even assuming that Plaintiff was represented by legal counsel during the hiring process (See Pl. Opp. 18.), this does not convince the Court that the motion should be dismissed as a matter of law.

[4] Although the contracts in both Junk and the instant case include a general merger clause, this Court notes a difference between the language of the clauses. Compare Junk, 2007 WL 4292034, at *3 ("this letter *supercedes any prior representations*" (emphasis added)), with Drago Decl. Ex. B ("[t]his agreement. . . supercedes all other representations . . . with respect to the matters contained in this Agreement"). However, courts have treated merger clauses worded similarly to the one here as standard merger clauses, see, e.g., Wurtsbaugh, 2006 WL 1683416, at *2, *7, and, therefore, this Court does not discuss the implications of the differences, if any, on this motion to dismiss.

10

representation in the instant case appears to be more remote from the matters set forth in the Agreement. See Drago Decl. Ex. B. Specifically, the subject area that is covered by the Agreement here is limited to the terms of Plaintiff's employment, including title, salary, and benefits, and therefore wholly unrelated to the alleged fraudulent representation concerning Defendant's credit and loan policies. Id.

The significance of this distinction is supported by Emergent Capital, in which a fraudulent inducement claim was brought against the defendant, a holding company, for allegedly inducing investors to purchase stock in its company by misrepresenting the status of its own investments. See Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc., 343 F.3d 189, 193 (2d Cir. 2003). The court referred to the broad range of subject matter covered by the contract at issue, which included warranties and representations regarding the defendant's capital structure, indebtedness, involvement in litigation, ownership and leases of real and personal property, and other matters connected with its business. Id. In concluding that the plaintiffs' failure to include the representations in the written agreement precludes as a matter of law a finding of reasonable reliance, the court specifically cited the "extensive contractual representation about other matters." Id. at 196. Accordingly, given the fact-specific nature of the

reasonableness of reliance together with the limited scope of the Agreement in the instant case, this Court declines to find Plaintiff's alleged reliance unreasonable as a matter of law.

## CONCLUSION

For the reasons stated herein, Defendants' motion to dismiss the Complaint is DENIED.

**SO ORDERED:**

                                                          _____
                                                          BARBARA S. JONES
                                                          UNITED STATES DISTRICT JUDGE

Dated:   New York, New York
            June 12, 2008